**Dal PERSSON–MOKVIST, Appellant,**

v.

**Robert H. ANDERSON, Vilma M. Anderson, Burton H. Bomhoff, Norman D. Vaughan, and Carolyn Muegge–Vaughan, Appellees.**

No. S–7453.

Supreme Court of Alaska.

Aug. 1, 1997.

---

Danny W. Burton, Wasilla, for Appellant.

Robin L. Koutchak, Edgar Paul Boyko and Associates, Anchorage, for Appellees.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

MATTHEWS, Justice.

A note in the Peters Creek Subdivision plat states that lots are "for residential/recre-ational use." Several subdivision residents keep and train dog teams; one couple maintains a bed-and-breakfast. The question presented is whether the superior court erred in concluding that these uses did not violate the note. We answer "no," because the dog-related uses are recreational and the bed-and-breakfast is a permissible use incidental to residential use.

## I. *FACTS AND PROCEEDINGS*

The Peters Creek Subdivision was state land that was subdivided in 1981 into five-acre lots. Plat note 21 states: "This subdivision is for residential/recreational use." Dal Persson–Mokvist purchased his lot in the subdivision in 1982.

In 1992 Persson–Mokvist filed a complaint against the appellees, also subdivision lot owners, alleging that their uses violate note 21. After a court trial, the court concluded that the challenged uses do not conflict with the note.

Appellees' uses, as found by the trial court, are as follows. Appellees Robert and Vilma Anderson are residents of the subdivision. They use three cabins on their two lots as bed-and-breakfast rentals, renting them approximately thirty to sixty days per year. The Andersons have kept between ten and twelve of their own sled dogs on their property, which their daughter trained for her use in the Junior Iditarod race. The Andersons do not raise dogs to sell.

Appellee Burton Bomhoff is a recreational dog musher who has run in the Iditarod race eight times. He has spent about one-half million dollars on dog mushing, but has won only about $10,000. The trial court found that Bomhoff was not in the "dog-racing business," and that his mushing was an "expensive hobby." He has never profited from selling dogs.

Appellees Norman Vaughan and Caroline Muegge–Vaughan have kept forty dogs on their Peters Creek lot and trained them during some winters. They have not had dogs on the property since 1993. In the court's words:

Mr. Vaughan is an internationally noted Arctic and Antarctic explorer. His income now comes from Social Security and a small pension from the University of Alaska. Mr. Vaughan ran dogs in the 1991 and 1992 Iditarod. He characterized himself at that time as the "oldest and slowest" musher in the race. His racing activities were supported by business sponsors and in-kind contributions.

The court found that Carolyn Muegge–Vaughan participated in the Iditarod as a hobby, made no money from her mushing activities, and "received contributions of fish heads, Ziplock bags, jackets and free shipping from sponsors."

The trial court's conclusion concerning the appellees' uses was as follows:

> None of the uses made by any of these defendants were incompatible with recreational and residential uses of the land. The Andersons' use of their land has been primarily residential and recreational. Bed-and-breakfast rental usage is residential and is fully compatible with and incidental to residential uses. The Vaughans' use has been primarily recreational. Their keeping of dogs and training those dogs for races was incidental to and compatible with recreational or residential uses of the property. Bomhoff's use has been recreational and residential. His keeping of dogs on the property has been incidental to and compatible with those uses of the property.

## II. *DISCUSSION*

There are no state statutes or regulations that directly govern the meaning of the terms "residential use" or "recreational use" as they appear in the plat note.[1] However, there were definitions of these or similar terms in state land disposal and planning regulations in existence when the subdivision was created.

The disposal regulations contained the following definitions:

> "private recreation lands" means those lands which because of location, physical features or adjacent developments are chiefly valuable as outdoor rural areas and may best be utilized by private non-commercial development[.]

11 Alaska Administrative Code (AAC) 54.510(23).

> "residential lands" means those lands which because of location, physical features or adjacent development may best be utilized for single or multiple unit dwellings[.]

11 AAC 54.510(27). The land planning and classification regulations provided:

**11 AAC 55.150. PRIVATE RECREATION LAND.**

(a) Land classified private recreation is land that, because of its rural location, physical features, or adjacent development, is suitable for private, low-density recreational development. No land may be classified private recreation until present and potential public recreation needs in the area have first been considered.

(b) The primary management goal is to provide for private recreational use of rural areas by allowing private recreational development to occur in an orderly fashion.

(c) Private recreation land is to be used primarily for the construction of recreational cabins, or hunting, fishing, or recreational camps. Other uses must be incidental to and compatible with the primary use.

**11 AAC 55.180. RESIDENTIAL LAND.**

(a) Land classified residential is land that, because of its physical features, adjacent development, and its location on or near an existing road, proposed road, or navigable waterway, is suitable for single- or multiple-family dwellings at medium to high density provided that adequate on-site or off-site services and facilities can be developed for solid waste disposal, wastewater disposal, and potable water delivery.

(b) The primary management goal is to provide for residential lands in areas where services and facilities necessary for

---

1. The interpretation of the plat note is a question of law. Questions of law are subject to *de novo* review. *Cummings v. Sea Lion Corp.*, 924 P.2d 1011, 1023 n. 18 (Alaska 1996).

human settlement exist or are likely to exist.

(c) Residential land is intended to be used for residential purposes only, other uses must be incidental to or compatible with the primary use. (Repealed 1983.)

A regulation governing "homesite entry zoning" provided for lot sizes not to exceed five acres restricted to "no more than one single family residence per lot," but permitted incidental uses and accessory structures as follows:

(b) Incidental uses that are conducted from the home are permitted, including child care, home crafts, sale of home-produced items, and other similar home business activities that employ only residents of the home.

(c) Accessory structures are allowed that are in conjunction with a permitted use.

11 AAC 91.130(b) and (c).

 These disposal and planning regulations govern the classification of lands by the state for use or disposition, but they do not purport to control the uses of lands once they are disposed of by the state. However, absent indications to the contrary, it is reasonable to conclude that the terms in the plat note that govern post-disposition land usage have essentially the same meaning as the same or similar terms in the regulations. The homesite zoning regulations govern post-disposition private use of the lands to which the regulations apply, but it does not appear that the regulations apply to appellees' Peters Creek lots. Again, however, it seems reasonable to employ the incidental use and accessory structure provisions in these regulations to the residential usage of Peters Creek lots, since they are of the same size and similar usage as homesite entry lots.[2]

Drawing on the regulations, the term "residential use" in the plat note embraces use for "single or multiple unit dwellings" and other uses "incidental to or compatible with" such use. 11 AAC 54.510(2), 11 AAC 55.180(c). Uses incidental to residential use include "child care, home crafts, sale of home-produced items, and other similar home business activities that employ only residents of the home," 11 AAC 91.130(b), and accessory structures dedicated to these uses are permitted. 11 AAC 91.130(c). The term "recreational use" encompasses use "for the construction of recreational cabins, or hunting, fishing, or recreational camps," and "[o]ther uses incidental to and compatible with" those uses. 11 AAC 55.150.

 The appellees' uses fall within these definitions. Based on ample evidence, their dog raising and training activities were found to be "recreational." Such commercial overtones as these activities had were aptly described as incidental to their recreational character.[3] The bed-and-breakfast usage by the Andersons can fairly be regarded as incidental to residential use. Bed-and-breakfast businesses are permissible in residential zones, with varying limitations. *E.g.*, Matanuska–Susitna Borough Code 17.40.540(A)(8) (1995); *see also, e.g.*, Anchorage Municipal Code 21.40.040(C)(8) (1996). Since it is not contended that the Andersons' bed-and-breakfast employs people who do not reside in the family home, the business fits the definition of a permissible incidental use under 11 AAC 91.130(b). Further, the three cabins are "accessory structures" in conjunction with a permitted use under 11 AAC 91.130(c).

---

**2.** Since the subdivision lots may be used for multiple unit dwellings, while homesite entry lots are restricted to single units, the homesite entry regulations might properly be viewed with liberality when applied to the Peters Creek lots.

**3.** Persson–Mokvist argues that large scale dog rearing and training is not incidental to residential use because it is unlike the incidental uses listed in 11 AAC 91.130(b) such as child care or sale of home-produced items. This argument misapprehends the nature of the incidental uses provision. The provision permits certain commercial activities. This is not relevant to the dog-related activities in this case, since they were found to be primarily recreational. Further, the dog-related activities are justified as a recreational use, rather than as a residential use so the regulation defining incidents to residential usage is not applicable.

Persson–Mokvist also contends that the court should have entered a general declaration that plat note 21 is valid and enforceable and that it prohibits all commercial uses of lots in the subdivision. This contention lacks merit. The trial court appropriately addressed whether the uses of the subdivision by appellees violated the plat and found that they did not. No other or further declaration was necessary or appropriate.

### III. *CONCLUSION*

The judgment of the superior court is AFFIRMED.

RABINOWITZ, J., not participating.